And our final case today is Jones v. Mathews. All right, I see Ms. Maytuka and Mr. Umrath. All right, you may proceed. Ms. Maytuka, did I pronounce that correctly? It's Ma-a-tuka. Ma-a-tuka. All right, the floor is yours. May it please the court, my name is Shayla Ma-a-tuka and I represent the appellant, the administrator of the estate of Toya Frazier. I would like to reserve two minutes for rebuttal. Summary judgment is granted only if the non-moving party is able to sufficiently establish the existence of an element essential to the party's case on which it will bear the burden of proof at trial. Where a reasonable jury could find for the appellants, the court should appellee was aware of the risk, consciously disregarded the risk. An appellant must show that appellee Mathews did not respond reasonably. Sergeant Mathews was deliberately indifferent to Toya Frazier's serious medical needs in three ways. First, a reasonable correctional officer would have called the on-call doctor for direction. Courts have consistently hailed that simply checking on an inmate is not enough. C. Perez, Arnett, and McGowan. Second, Mathews prior training combined with Ms. Frazier's warning that she was addicted to and had used heroin the night before her booking. The number of times Frazier can be seen on video vomiting and the constant symptoms exhibited on video, which Mathews was monitoring, by the way, from the booking desk. That video showed that Ms. Frazier's constant moaning, her going to the toilet, her kicking the doors, her grabbing her stomach. All of these things are evidence of the fact that Mathews was aware that Frazier was suffering from a serious medical condition and he did not call or inform the on-call doctor. Ms. Mahatuka, the evidence shows that it's not the heroin withdrawal that ultimately caused her death. It's the fact that she had an allergic reaction to the drug difhydramine and there's evidence shown that she went in and took something out of her personal belongings, put something in her mouth from there. Is there any evidence that the officer had any knowledge whatsoever that she might have this allergic reaction, which is a different question than the heroin issue? Your Honor, the officer knew that as a drug-addicted person, she had the propensity to smuggle in contraband in order to alleviate the withdrawal symptoms that she was having. In fact, Mathews was trained every single year. They had to go through two trainings. One was a mental health and risk management training and the other was a medical training. Both of those emphasize that inmates are likely to smuggle in drugs and that they'll do this to their detriment. Their suicide training talked about how smuggling or ingesting drugs to deal with the withdrawal symptoms is actually one of the major causes of suicide in the jail system. This is a training that they had every single year. So the harm that was caused was that she was forced to self-medicate and this was foreseeable because Mathews had this training every single year. Ms. Mahatuka, let's talk about the second point you were making, Mathews' knowledge. You talked about training. You talked about a warning that she had used heroin and that the symptoms were on the video, which Mathews could see from the booking area. This case has got a lot of questions with regard to inferences. There's got to be a fact in the record from which an inference could be made. What's the record show with regard to Mathews' knowledge that the plaintiff, Ms. Frazier, had taken heroin right before she'd gotten into the jail? Your Honor, that note was in her jail records. She was placed on the medical watch list and that watch list included the reasons why she's placed there. The medical watch list required the jail staff to have a heightened standard of observation of the inmates. So when you're on the medical watch list, you have to be monitored every 15 minutes. Mathews alluded to this in his affidavit as well. I do have his affidavit in front of me. What paragraph of the affidavit? I'm sorry, Your Honor. I don't have the affidavit in front of me, but he does state that she was on the medical watch list. Because she was on the medical watch list, does that place him on notice that he is supposed to do something different? Yes, Your Honor. When they're placed on the medical watch list, the jail staff, there's emails sent out and the jail staff is notified about what the issues were. In her case, she had some prior seizures, but most importantly, she had an addiction to heroin and it was also noted in her records that the last time that she had taken heroin was just the night before being admitted to the jail. So is your position that Mr. Sergeant Mathews' knowledge with regard to Frazier and heroin was during the entirety of his shift or was it just after she starts kicking the the third time he goes back, she references stomach problems as a result of withdrawal? It's our contention that he knew from the beginning that he knew, you know, her booking chart is at the booking desk, which he supervised. Those records are right there readily available for him. This is also not the first time that she's been in the Champaign County Jail and he had some familiarity with her as well. But all that set aside, there was, he knew that she was on medical watch because of these issues. Ms. Mauchuka, let me also focus you in on paragraph 63 of the third amended complaint. That's the paragraph where you talk about the deliberate indifference claim, including the death, but also including that pain and suffering or personal injury that she may have suffered short of that. Is there a certain time frame that you're arguing that Sergeant Mathews was responsible for that? I'm sorry, I don't completely understand your question, Your Honor. In the third amended complaint, you made reference to the fact that it was the death, but it was also the injuries that Ms. Frazier suffered up until the death. I'm focusing on the latter part. Is there a certain time frame that you're saying Sergeant Mathews was responsible for in terms of Ms. Frazier, the deliberate indifference towards Ms. Frazier short of the she ends up dying later that day? Yes, Your Honor. I am focused with Sergeant Mathews just during his shift. So he became aware at about 2.30 a.m. that she was in distress and having some issues. In fact, he moved her from her cell that was joined with another inmate to a private cell because she was bothering. She was bothering. So he became aware at about 2.30 that morning. According to the video there, she had a very, very active night and he was on duty the entire night. You know, he went to her cell multiple times through the night. He directed other people to go to her cell and move her back, drag her back from the door. And so he's responsible for the pain and suffering and the conscious pain and suffering she had prior to her death throughout that entire five and a half hour period before he chose to send a non-emergent email to the medical nurse that was about to come on duty. All right. Thank you very much. We'll move to Mr. Unrath. Thank you, Your Honor. My name is Craig Unrath. I represent Sergeant Arnold Mathews in Champaign County. To establish deliberate indifference, plaintiff must proffer evidence that Sergeant Mathews was aware of a substantial risk of injury, serious injury, and consciously disregarded that risk. I fail to see that any evidence supporting either of those criteria. Now, she was obviously in some distress during the four hour period between 2.30 and 6.30 in the morning. However, every time Sergeant Mathews responded, she refused to say what was wrong with her. And that testimony is corroborated by two other correctional officers, Officers Warren and Christians. Now, when she finally did say what was wrong with her, that she was suffering from withdrawal, he acted appropriately. He notified by email the medical staff, and then he face-to-face notified a nurse of her condition. Now, the important thing, I think, is this, is that when the medical staff finally saw her, whatever serious medical issue she had was apparently resolved. Nurse Kemp saw her at nine o'clock in the morning, about a half an hour after Sergeant Mathews' shift ended. She found her in no particular distress, gave her blood pressure meds, and Tylenol. Then at 11.30, she performed a withdrawal assessment, which showed that she had some mild stomach pain and moderate restlessness, five on a scale of one to ten. Now, plaintiff has argued in her brief that Sergeant Mathews should have taken her and sent her off to an emergency room, put her in an ambulance, get an on-call doctor in right now. Well, if that had done, if he had done those things, it's reasonable to assume that the medical staff would have found exactly what Nurse Kemp found, which was she was in no particular distress. To the extent that we have a serious medical issue, that we have a substantial risk of serious injury that occurred during Sergeant's shift, those issues have resolved completely, almost entirely. At 11.30, they found that she was suffering from mild withdrawal, and they provided her with a withdrawal medication. Now, negligence, even gross negligence, is insufficient to establish bait liability for under a deliberate indifference standard. Under the circumstances of this case, I fail to see even a viable claim for negligence. I think Sergeant Mathews acted appropriately. Now, plaintiff has suggested that she had the propensity to smuggle drugs. I think that that propensity is probably common to almost all inmates. They also say that she was forced to self-medicate. Well, at 11.30, she was given withdrawal medication. I don't see any indication that she was forced to self-medicate. When all is said and done, I think that Sergeant Mathews acted appropriately. When he was finally informed of her medical condition, that she was suffering from withdrawal, he acted appropriately. Then we come to the ultimate cause of her demise, which was diphenhydramine toxicity. The district court relied on this pretty heavily, saying that Sergeant Mathews had no reason to believe that she had smuggled drugs into the prison, the jail. It's difficult to see how he can consciously disregard a risk that he had no knowledge of. That's all I have. If the court has any questions, I urge the court to affirm the district court's order granting summary judgment in this case. Thank you very much. Thank you very much. Ms. Maatuka. The third point was that self-medication by an inmate known to be struggling with substance abuse is exactly the type of harm that Mathews ignored and that he'd been trained to recognize and prevent. The facts show that Mathews was deliberate and different because a reasonable officer would have simply called the on-call doctor. For a court to just require a check-in is against public policy. Similarly, in McGowan, this court held the delays in prisoner's treatment, even for non-life-threatening conditions, may constitute deliberate indifference. And in Arnett, this court established that a prisoner need not show that his or her medical needs were literally ignored. And in Gill, this court held that the hours of needless suffering for no reason is enough to survive summary judgment. We find further that the evidence of deliberate indifference by looking more closely at Mathews' annual training. First, the required annual training on medical risk assessment and suicide prevention that Mathews goes through every year underscores that people experiencing withdrawal in the past are more likely to experience it again. This training manual goes on to warn that the first 24 hours... Your time has expired, so you'll have to wrap up. The first 24 hours are the most important. And finally, it didn't matter what Ms. Frazier said to Mr. Mathews. The video evidence was clear that she was saying something to him, but it doesn't matter what she said or what she did not say. What he saw for five and a half hours that night was a woman in medical distress in active withdrawal, and he failed to even bother to call the on-call doc to ask for help or guidance. For these reasons, we ask that the lower court be overturned. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement, and that concludes our calendar today. Thank you very much.